LOWRIE & ROBINSON LUMBER CO. *v.* RUBIN.

1. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—MUTUAL MISTAKE.

    Where a lumber company received deeds to certain lots subject to mortgages amounting to $30,000, with the understanding that on the payment to it of $10,000, which was owing for materials furnished, it would deed them back, a court of equity has power to reform the contracts executed by it to carry out said agreement which, by mutual mistake, required it, on the receipt of $10,000, to pay the $30,000 and deed the lots back free and clear, and thus suffer a loss of $20,000.

2. SAME—BONA FIDE PURCHASER.

    A realtor with years of experience, who purchased the contract interests in two apartment houses without an abstract or examination of the records, and who had but slight acquaintance with his assignor, *held*, under the circumstances, not a *bona fide* purchaser so that it would be inequitable to reform the contract to express the original agreement of the parties and correct a mutual mistake which would subject the vendor to a loss of $20,000.

3. VENDOR AND PURCHASER—LAND CONTRACTS—COURT HAS NO POWER TO DISPOSSESS VENDEE PENDING FORECLOSURE.

    On foreclosure of a land contract, the court has no power to dispossess the defendant and to place the plaintiff in possession pending foreclosure, since the rights of the vendor are no greater than those of a mortgagee.

4. SAME—DECREE AGAINST VENDEE MAY NOT INCLUDE SUMS BEYOND OBLIGATION OF CONTRACT.

    In a suit to foreclose a land contract, the assignee of the vendee may not be required to pay more than the obligation of the contract, which he assumed, and therefore the decree against him may not include sums paid by the vendor upon the mortgages, which defendant never assumed.

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 23, 1928. (Docket No. 148, Calendar No. 34,044.) Decided December 4, 1928.

Bill by the Lowrie & Robinson Lumber Company against Peter Rubin, Nathan M. Kanagur, and others for the reformation of land contracts on the ground of mutual mistake, and for foreclosure. From a decree for plaintiff, defendant Kanagur appeals. Modified and affirmed.

*Younglove & Chockley* (*Joseph B. Beckenstein,* of counsel), for plaintiff.

*Robert M. Dalton* (*Edmund E. Shepherd,* of counsel), for appellant.

WIEST, J. This is a suit in equity to reform two land contracts and have foreclosure. Defendants Rubin held a land contract for the purchase of a lot and a half in a subdivision in Wayne county, and defendants Kaplan held a similar contract for the purchase of the adjoining lot and half lot. They desired to erect on each lot and a half a four-family apartment house, and arranged with plaintiff to furnish materials, and agreed that, when the buildings were erected and they received deeds, they would mortgage each parcel for not more than $15,000, and then each deed to plaintiff, subject to mortgage, and take back land contracts calling for payment of the amount due plaintiff for materials. The materials were furnished, the apartment buildings erected, deeds obtained, mortgages on each parcel given for $15,000, and deeds then executed and delivered by the Rubins (who had acquired the Kaplan interest), subject to the mortgages, and two land contracts were given by plaintiff to the Rubins, each

calling for payment to plaintiff of $5,000 in one year with interest at the rate of 7 per cent. per annum. There was due plaintiff $10,000 for materials. The deeds to plaintiff were intended to secure payment for materials furnished. The two apartment buildings were worth between $60,000 and $70,000 at the time they were deeded to plaintiff and the land contracts given the Rubins, leaving a margin, above the two mortgages and plaintiff's security, of about $20,000. The land contracts given the Rubins each provided that upon the payment of $5,000, with interest and taxes, plaintiff would execute and deliver to Peter and Annie Rubin, or to their assigns, good and sufficient conveyances in fee simple, "of said described lands, free and clear of and from all liens and incumbrances, except such as may have accrued thereon subsequent to the date hereof, by or through the acts or negligence of said party of the second part or their assigns."

Plaintiff had just received deeds from the Rubins stating each of the premises was subject to a $15,000 mortgage, but assumed no obligation to pay the same and it is inconceivable that the land contracts, intended to secure plaintiff's $10,000 for materials, should be drawn to require plaintiff, upon payment of the $10,000, to at once pay $30,000 to satisfy the mortgages and thereby suffer a loss of $20,000 in order to give deeds in accord with the contracts as written. The written agreement, under which the materials were furnished, the deeds from the Rubins to plaintiff, and every circumstance establish the fact of a mutual mistake in the land contracts.

But at this point defendant Kanagur comes forward and seeks to stay reformation of the contracts under the claim that he purchased from the Rubins their land contract interests for a valuable con-

sideration, relying in good faith upon the verity thereof, without knowledge of any mistake therein and without suspicion of the rights of plaintiff. Mr. Rubin was evidently not aware of the mistake in the land contracts, for, at the expiration of the year, he was unable to pay plaintiff and asked for an extension of time, which plaintiff was willing to grant, but before reduced to form he met Kanagur and Kanagur shrewdly saw the mistake and hoped to profit thereby. We are not at all impressed that Mr. Kanagur, in good faith, purchased without knowledge or suspicion of the true rights of plaintiff. We think he knew that the premises were covered by mortgages amounting to $30,000, and was aware that the contracts, as they read, not only wiped out plaintiff's claim but as well saddled upon plaintiff a liability of $20,000.

Defendant Kanagur is a realtor, with years of experience, and claims he purchased from the Rubins, without an abstract or examination of the records, and paid $30,000 in cash for the apartment properties, obtained the money from his safety deposit box, where he had kept it for five years, and it was money given his wife by her mother. Kanagur had but slight acquaintance with Mr. Rubin. It would take a strong faith in Mr. Kanagur to accept his version, and it appears the circuit judge had no such faith. Kanagur's acts and efforts, right after he succeeded to the Rubins' rights, in setting up right to pay plaintiff $10,000 and have deeds under which plaintiff would have to satisfy mortgages amounting to $30,000, show shrewdness rather than a disclosure of good faith. Kanagur was not such a simpleton, nor so uninquisitive about the state of the title as he would have us believe. He thought he saw a chance, if he could make it appear that he was within

the protection accorded purchasers in good faith, to make plaintiff lose $20,000, and such loss would be his gain. He overlooked the power of equity to correct mutual mistakes by reformation of contracts.

Kanagur has had possession of the apartment houses, collected the rents, and has not paid the taxes, nor any interest upon the land contracts or the mortgages of $30,000. Plaintiff, to protect its interest, has paid the taxes, interest, and some of the principal on the first mortgages, in all to the amount of $8,235.92.

The decree in the circuit court found there was due plaintiff, on the land contracts and interest and taxes paid, together with payments on the mortgages, the sum of $20,635.44. The decree reformed the contracts, making them call for deeds warranting the title against the acts of plaintiff only. The decree also granted foreclosure of the land contracts if the sum found due was not paid within 30 days, and, after the 30 days, if the sum found due was not paid, then plaintiff was to have possession of the premises with right to collect the rents and profits, apply the same against the indebtedness due it, and defendant Kanagur was required to deliver up possession. The decree also provided for sale by a commissioner, and found defendant Kanagur personally liable for the amount due and for deficiency, if any, upon sale.

The court had no power to dispossess Kanagur and to place plaintiff in possession pending foreclosure. The rights of plaintiff are no greater than those of a mortgagee, and, upon foreclosure, the court may not, pending sale and the statutory period of redemption, dispossess a mortgagor and place the mortgagee in full possession. This part of the decree is reversed.

In the assignment of the land contracts by the Rubins to Kanagur he assumed the obligations of the contracts, and this required payment of $10,000 to plaintiff, with interest, and the payment of taxes. The assumption by Kanagur of such liability cannot be extended to hold him for sums paid by plaintiff upon the mortgages. This part of the decree is also reversed.

With the modifications mentioned, the decree is affirmed, with costs to plaintiff.

FEAD, C. J., and NORTH, FELLOWS, CLARK, McDONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit.